AO 91 (Rev. 11/11) Criminal Complaint (modified by USAO for telephone or other reliable electronic means)

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| | |
|---|---|
| United States of America <br> v. <br><br> Emre Teski <br><br> *Defendant(s)* | ) ) ) ) Case No. 3:25-mj-126 ) ) ) ) |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __11/13/2024 to 3/6/2025__ in the county of __Greene__ in the __Southern__ District of __Ohio__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2320(a)(1) | Traffkicking in Counterfeit Goods |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

BRANSON T YEAKLEY
Digitally signed by BRANSON T YEAKLEY
Date: 2025.03.06 13:32:10 -05'00'

*Complainant's signature*

SA Branson Yeakley, HSI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by __Telephone__ *(specify reliable electronic means)*.

Date: March 6, 2025

City and state: Dayton, Ohio

Caroline H. Gentry
United States Magistrate Judge

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Branson Yeakley, your Affiant, being duly sworn, depose and state that:

1. This affidavit is submitted in support of an application for an arrest warrant for Emre TESKI for Trafficking in Counterfeit Goods, in violation of 18 U.S.C. § 2320(a)(1), from at least November 13, 2024 to March 6, 2025, in the Southern District of Ohio.

2. I have been a Special Agent (SA) for the United States government since September 2019. I began as a SA with the Air Force Office of Special Investigations (OSI) until transferring to Homeland Security Investigations (HSI) in December 2023.  As part of my training, I attended the Federal Law Enforcement Training Center (FLETC) Criminal Investigator Training Program (CITP), Air Force OSI Basic Special Investigator's Course (BSIC), and HSI Special Agent Training Program (HSISAT) where I received training in financial crimes, including but not limited to wire fraud, federal money laundering laws, and counterfeit trademarks and copyright infringement. I have also received subsequent training, both formal and informal, on these types of offenses, including those offenses described in this affidavit.

3. I have participated in investigations into these crimes where the subject(s) attempt to conceal the nature of their activity, including as the affiant for search warrant applications and conducting plain-view seizures of counterfeit trademarked items.  I am aware that individuals involved in the trafficking of counterfeit trademarked frequently tend to conceal their identities, their communications, and the locations where they live, as well as their knowledge of the inauthenticity of their products. I have participated in the investigation of the offenses referred to above and have reviewed HSI reports, and reports prepared by other law enforcement agencies and private sector investigators.

1

4. As an HSI SA, my duties include enforcing laws against counterfeit trademarks and copyright infringements (collectively, referred to as laws protecting intellectual property rights (IPR)) within the Dayton and Cincinnati, Ohio area. I have received training on identifying counterfeit trademarked items, including by reviewing brand protection guides (which, specific to this affidavit include, but are not necessarily limited to, Nike and the Premier League).

5. The information set forth below is not a complete recitation of all the facts known in this entire investigation. Rather, it is specific information that I believe supports probable cause for the issuance of the requested arrest warrant.

## FACTS IN SUPPORT OF PROBABLE CAUSE

6. The United States Patent and Trademark Office (USPTO) is an agency of the United States that promotes the progress of science and the useful arts by securing for limited times to authors and inventors the exclusive right of their respective writings and discoveries (Article I, Section 8 of the United States Constitution). Among the USPTO's major functions are the examination and registration of trademarks and the dissemination of trademark information. Through the registration of trademarks, the USPTO assists businesses in protecting their investments, promoting goods and services, and safeguarding consumers against confusion and deception in the marketplace. By disseminating trademark information, the USPTO promotes and understanding of intellectual property protection and facilitates the development and sharing of new technologies worldwide. Registration of a producer's trademark on the USPTO's principal register gives notice to the world of the producer's exclusive right to use and to protect that trademark.

7. A trademark is a word, name, symbol, or device or any combination of such items, that is intended to distinguish one producer's goods from those of other producers and to indicate the source of the goods. Trademark law broadly prohibits uses of trademarks, trade names, and trade dress that are likely to cause confusion for consumers about the source of a product or service.

8. Nike, Major League Soccer, and Premier League registered their trademark on the principal register of the USPTO for use on clothing, shoes, and other materials. These companies marked their products with their registered trademarks to distinguish them from their competitors' products and to assure the public of their quality. At no time did any of the companies listed in this affidavit authorize, ratify, or acquiesce to the use of their trademarks by the defendant, TESKI, nor did any other person have the power to do so.

9. HSI is investigating TESKI for his operation of kiosks at the Mall at Fairfield Commons, 2727 Fairfield Commons Blvd, Beavercreek, OH (located within the Southern District of Ohio), where he is selling primarily goods that contain counterfeit trademarks.

10. On November 13, 2024, I conducted surveillance at The Mall at Fairfield Commons, 2727 Fairfield Commons Blvd, Beavercreek, Ohio looking for violations of Intellectual Property Rights (IPR), along with a private investigator that represents various brands in IPR matters.

11. During this surveillance, I initially identified two kiosks and a smaller display directly outside of the food court that contained items that likely contained counterfeit trademarks and/or copyright infringing items:

    a. One of the kiosks primarily sold replica professional soccer jerseys. These jerseys had trademarks that included but were not limited to Adidas, Major League Soccer

(MLS), Manchester City, Chelsea, and Club Internacional de Fútbol Miami. There was a sign that just stated, "Soccer Jerseys."

b. The other kiosk sold primarily oversized slippers that looked like sneakers. Most, if not all, slippers had a Nike swoosh and several had Air Jordan logos. One slipper had giant writing on the side that said "Off-White™ for NIKE "Air Jordan 1" Beaverton, Oregon USA c. 1985." There was a sign that just stated "Slippers."

12. The private investigator requested to purchase a jersey and a pair of slippers from the operator, who was later determined to be TESKI[1]. The private investigator requested to purchase a jersey and a pair of slippers, and TESKI immediately began negotiating a price. TESKI and the private investigator settled on $35 for the jersey and $30 for the slippers. These purchased items were:

   c. a pink Club Internacional de Fútbol Miami MMXX Messi #10 jersey, size medium.

   d. a pink and white slipper imitating an oversized slipper, with a red Nike Swoosh along the side.

13. Pictures of the soccer jersey purchased are below:

---

1. I determined this operator was TESKI based on comparing a photograph of TESKI taken by U.S. Border Patrol after TESKI illegally entered the United States on or about September 10, 2022, to the individual I observed. See below for further details.



14. A picture of the slipper purchased is below:



15. On November 21, 2024, I received an affidavit signed by Nike Inc. Americas Brand Protection Director Newton Vieira Jr., which confirmed the slipper purchased by the private investigator contained the trademarked Nike Swoosh and, "Following review, it has been determined the footwear is counterfeit. The reasoning for the counterfeit determination is as follows: Nike does not currently manufacture or offer such product for

5

sale. All Nike products are serialized and there is no serial number that is associated with this product. The product is missing Nike's corporate standard hang tag and packaging.

16. This Nike Swoosh is registered with the U.S. Patent and Trademark Office (USPTO) as U.S. serial number 73304275 / U.S. registration number 1323343 for the use on footwear, and it was registered on March 5, 1985, prior to the purchase of this slipper.

17. On December 21, 2024, I again conducted surveillance of TESKI's kiosks at the Mall at Fairfield Commons, which disclosed the following notable information:

    a. Where the game devices had previously been, there was then soccer jerseys and hats (beanie style) containing trademarked soccer teams, including FC Barcelona, Club Internacional de Fútbol Miami, Manchester City, and Arsenal.

    b. I took a photo of TESKI at the kiosks:




*Photo taken on Dec 21, 2024, at the Mall at Fairfield Commons*      *Booking Photo of TESKI from United States Border Patrol*

18. On January 16, 2025, I emailed photos of the soccer jerseys, hats, and charms, taken on November 13, 2024, and December 21, 2024, to a brand representative for the Premier League, England Football Association, and the United States Soccer Federation (USSF).

6

The brand representative reviewed the images and confirmed they were counterfeit trademarked products. In my training and experience, these soccer jerseys and hats contain words or designs that are trademarked in the United States for use on the relevant product.

19. On February 21, 2025, I again conducted surveillance at the Mall at Fairfield Commons and observed TESKI and the same unknown male operating TESKI's kiosks, and the kiosks were selling similar items, including the counterfeit Nike slippers.

20. Also on February 21, 2025, I met with security at the Mall at Fairfield Commons. A security employee confirmed that TESKI had rented the kiosks that contained the soccer jerseys, slippers, and hats, charms, and that part of his rental included a storage location not accessible to the public. During our discussion of TESKI, the employee recalled that, following law enforcement seizures of counterfeit items at the nearby Dayton Mall in December 2024[2], TESKI did not open his kiosks for several days afterwards.

21. On February 28, 2025, the Honorable Peter B. Silvain granted a federal search warrant for the kiosks and storage unit rented by TESKI at the Mall at Fairfield Commons.

22. On March 5, 2025, the Honorable Caroline H. Gentry granted a federal search warrant for another storage unit rented by TESKI at the Mall at Fairfield Commons. TESKI had relocated his storage unit to another location in the mall.

---

2. On December 17, 2024, I (along with other Special Agents from HSI Cincinnati and the same private investigator referenced earlier in this affidavit who made the undercover purchases from TESKI on November 13, 2024) conducted searches of three businesses at the Dayton Mall, 2700 Miamisburg Centerville Road, Dayton, Ohio, based on consent. As a result of these searches, I conducted a plain-view seizure of more than 2,000 suspected counterfeit items. Of the items I seized during that seizure, 12 were Nike slippers similar to those sold by TESKI, 5 were a game system almost identical to one sold by TESKI, and 76 were another game system containing counterfeit trademarks/copyright infringing material.

7

23. On March 6, 2025, I approached TESKI at his kiosk in an undercover role. I questioned him on the legitimacy of his trademarked items, and he stated that the items were knockoffs and a real soccer jersey would cost $400 and Ohioans could not afford a legitimate soccer jersey.

24. Shortly after this encounter, law enforcement returned to TESKI's kiosks in an overt role and executed the federal search warrant. During this encounter, I again questioned TESKI on his knowledge of the inauthenticity of his trademarked items, and he did not claim that they were authentic. TESKI's identity was confirmed from his identification in his wallet.

25. From the search warrant, we seized numerous items containing confirmed or suspected counterfeit trademarks.[3]

///

///

///

///

///

///

///

---

[3] These items include items previously confirmed by brands to be counterfeit, items identified by a private investigator on-site as counterfeit, or items that, in my training and experience, there is probable cause contain counterfeit trademarks.

**CONCLUSION**

26. Based on the foregoing, there is probable cause to believe that TESKI has committed violations of 18 U.S.C. § 2320(a)(1) – trafficking in counterfeit goods from at least November 13, 2024 to March 6, 2025, in the Southern District of Ohio.

27. As such, I request that an arrest warrant be issued to bring TESKI before this Court based on the allegations contained herein.

_____
Branson Trey Yeakley, Special Agent,
Homeland Security Investigations

By telephone
Sworn to me this __6th__ day of March 2025.

_____
Caroline H. Gentry
United States Magistrate Judge

9